[No. 24043. Department Two. January 12, 1933.]

THE STATE OF WASHINGTON, *on the Relation of the Milwaukee Land Company, Respondent,* v. WILL H. TAYLOR, *as Assessor of Clallam County, Appellant.*[1]

[1]Reported in 17 P. (2d) 884.

*Wm. W. Bruce* and *W. F. Phillips,* for appellant.

*Trumbull, Severyns & Trumbull,* for respondent.

MAIN, J.—By this action, the Milwaukee Land Company sought a writ of mandamus directed to the assessor of Clallam county, requiring him, as such assessor, to comply with an order of the board of equalization of the county relating to the valuation of cut-over or logged-off lands. The cause was tried to the court without a jury, and resulted in findings of fact from which the court concluded that the land company was entitled to the relief which it sought. Judgment was entered directing that the writ, as prayed for, be issued, and from this the assessor of the county appeals.

The Milwaukee Land Company is a corporation organized under the laws of the state of Iowa, and during the year 1931 was the owner of approximately ten thousand acres of logged-off or cut-over lands in Clallam county. Will H. Taylor was the duly elected, qualified and acting assessor of the county during that year. When the board of equalization of the county met in July, 1931, representatives of the land company appeared before it and asked that the assessment upon the logged-off lands be reduced. There were before the board at this time a list or schedule of logged-off lands showing the descriptions thereof and a map with appropriate legends and coloring which indicated the particular logged-off lands which were being considered at the hearing.

After the hearing, and on August 17, the board of equalization caused an order to be entered in the journal or records of its proceedings, which is as follows:

"Messrs. T. F. Trumbull, M. F. Gaynor, S. A. Stamm, having appeared before the Board on July 14, and took up the matter of assessment values on logged-

off or cut-over lands west of the Lyre river, and the Board having reserved action thereon to 10 a. m. Friday, July 17th, the Board resumed consideration of the matter at that hour, but again postponed decision to 3 o'clock p. m., the same day, and at that hour again took up the matter, and the Board, having before it a schedule of logged-off or cut-over lands marked 'A', it is ordered by the Board of Equalization that all such logged-off lands be valued for taxation purposes at $2.50 per acre, and it is the purpose hereof to cover all logged-off lands within such areas not suitable for agricultural purposes but for reforestation only, at $2.50 per acre for taxation purposes.''

After the entry of this order, the assessor made no reduction in the assessment of the logged-off lands of the land company upon the rolls in his office. There was in the assessor's office a classification of lands of the county as improved and unimproved, but there was no classification of logged-off or cut-over lands, indicating what was suitable for agricultural purposes and what was only suitable for reforestation. The assessor gave as a reason why he did not comply with the order that he did not have the money, and there was not sufficient time for him to determine what portion of the lands was suitable for agricultural purposes and what portion was only suitable for reforestation. The present action was begun, for the purpose above indicated, January 15, 1932.

The first question to be considered is the meaning of the order which the board of equalization caused to be entered and which is above set out. It will be observed that that order, after making certain recitals and referring to the schedule of the logged-off or cut-over lands which was then before it, says:

''It is ordered by the board of equalization that all such logged-off lands be valued for taxation purposes at $2.50 per acre, and it is the purpose hereof to cover

all logged-off lands within such areas not suitable for agricultural purposes but for reforestation only, at $2.50 per acre for taxation purposes."

Had the order stopped when it simply provided that all logged-off lands should be valued for taxation purposes at $2.50 per acre, its meaning would have been clear, and the assessor would have had no difficulty in complying therewith. The order, however, did not stop with this, but proceeded to define what was meant by logged-off lands. It stated that the purpose was to cover "all logged-off lands within such areas not suitable for agricultural purposes but for reforestation only, at $2.50 per acre for taxation purposes." In considering the order, we must give effect to all of its provisions.

The board, in the order, having defined what they meant when they provided that all such logged-off lands be valued for taxation purposes at $2.50 per acre, effect must be given to their definition. Plainly, it seems to us the order means, when all of its provisions are taken into consideration, that it was the intention of the board to reduce the valuation upon logged-off or cut-over lands which were suitable for reforestation only to $2.50 per acre for taxation purposes, but that upon all of such lands which were suitable for agricultural purposes the assessment was not to be reduced.

This being the meaning of the order, as we view it, the next question is whether the board of equalization could require, by entering a general order, the assessor to go into the field and determine what portion of the lands was only suitable for reforestation and what portion was suitable for agricultural purposes. The powers and duties of the board of equalization are set forth in Rem. Rev. Stat., § 11220, where it is provided:

"The county commissioners, or a majority of them, shall form a board for the equalization of the assessment of the property of the county: . . . The board of equalization shall meet in open session for this purpose annually on the first Monday in July at the office of the county assessor, who shall act as clerk of said board, and, having each taken an oath fairly and impartially to perform their duties as members of such board, they shall examine and compare the returns of the assessment of the property of the county and proceed to equalize the same, so that each tract or lot of real property and each article or class of personal property shall be entered on the assessment-list at its true and fair value, according to the measure of value used by the county assessor in such assessment year, and subject to the following rules:

"First. They shall raise the valuation of each tract or lot of real property which in their opinion is returned below its true and fair value to such price or sum as they believe to be the true and fair value thereof, after at least five days' notice shall have been given in writing to the owner or agent.

"Second. They shall reduce the valuation of each tract or lot which in their opinion is returned above its true and fair value to such price or sum as they believe to be the true and fair value thereof. . . .

"The county assessor shall keep an accurate journal or record of the proceedings and orders of said board in a book kept for that purpose, showing the facts and evidence upon which their action is based, and the said record shall be published the same as other proceedings of county commissioners, and shall make a true record of the changes of the descriptions and assessed values ordered by the county board of equalization. Having corrected the real and personal assessment-rolls in accordance with the changes made by the said county board of equalization, he shall make duplicate abstracts of such corrected values, one copy of which shall be retained in his office, and one copy forwarded to the state board of equalization on or before the first Monday in August next following the meeting of the county board of equalization. . . ."

It will be observed that, by this statute, the county assessor shall act as clerk of the board; that the board shall examine and compare the returns of the assessment of the property of the county and proceed to equalize the same, so that "each tract or lot of real property" shall be entered upon the assessment roll at its true and fair value; that the board shall raise the valuation of "each tract or lot of real property" which, in their opinion, is returned below its true and fair value; that they shall reduce the valuation of "each tract or lot" which, in their opinion, is returned above its true and fair value to such price or sum as they believe to be the true and fair value thereof; and that the county assessor shall keep an accurate journal or record which will show the changes of the "assessed value" ordered by the board.

The only inference, it would appear, that could be drawn from the provisions of this statute is that, when the board of equalization believes that a particular tract of land is assessed too high, it is their duty to lower it to a value which is reasonable and fair, and have the same specified in the record of their proceedings. We find no authority in the statute by which the board could delegate the duty of making the reduction to the assessor who was the clerk of the board.

From what has been said above, it appears that the board gave a general direction to the assessor, by its order, to reduce the taxes upon all logged-off or cut-over lands which were suitable only for reforestation to the sum of $2.50 per acre. The board made no finding as to the value of each particular tract or lot, or as to what tracts were only suitable for the purposes indicated. In the statute, as already set out, there is repeated reference to the duty of the board to equalize the assessment so that each tract or lot shall be en-

tered upon the assessment list at its true and fair value.

The order entered was one not contemplated by the statute, and was ineffective. The land company was not entitled to a writ of mandamus to require the assessor to place a value of $2.50 per acre upon all logged-off or cut-over lands here involved; and was not entitled to such writ to require the assessor to determine what lands were suitable for agricultural purposes and what were suitable only for reforestation, and then reduce the assessment on the latter to $2.50 per acre. The duty of making the reduction, if the lands were assessed too high, was upon the board, and, in making the reduction, it was required by the statute to fix a value upon each tract or lot of real property upon which the assessment was reduced.

Whether there is any other reason why the writ of mandamus should not issue in this case, it is not necessary for us to inquire, and we express no opinion with reference thereto.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action.

BEALS, C. J., STEINERT, and TOLMAN, JJ., concur.